```
                    3UNITED STATES DISTRICT COURT
                        DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| RODERICK D. GAINES, JR., | No. 1:18-cv-16853-NLH-AMD |
| Plaintiff, | |
| | OPINION |
| v. | |
| SECURITY GUARD, INC., T/A TRI-COUNTY SECURITY, et al., | |
| Defendants. | |

**APPEARANCES:**

MICHAEL P. MURPHY
PREEYA BANSAL
MURPHY LAW GROUP LLC
1628 JOHN F. KENNEDY BLVD.
EIGHT PENN CENTER - SUITE 2000
PHILADELPHIA, PA 19103

   *On behalf of Plaintiff.*

KATHRYN MARIE BRADY
KANE PUCH KNOELL TROY & KRAMER LLP
510 SWEDE STREET
NORRISTOWN, PA 19401
PAUL M. HAUGE
GIBBONS. PC
ONE GATEWAY CENTER
NEWARK, NJ 07102-5310

   *On behalf of Security Guard, Inc.*


ALAN J. COHEN
ATLANTIC COUNTY DEPARTMENT OF LAW
1333 ATLANTIC AVENUE
ATLANTIC CITY, NJ 08401

   *On behalf of Atlantic County.*

**HILLMAN**, District Judge

    Before the Court is defendant, Atlantic County's motion for summary judgment (ECF 46) and defendant, Security Guard, Inc.'s ("Security Guard") motion for summary judgment (ECF 48).  For the reasons expressed below, Atlantic County's motion will be granted in part and denied in part as moot and Security Guard's motion will be granted in its entirety.

## BACKGROUND

    The instant matter before the Court arises out of Roderick D. Gaines, Jr.'s ("Plaintiff") claims that he was fired from his position as a security guard because he was disabled.  Plaintiff suffers from a condition called a dropped foot, which causes him some discomfort. (See ECF 46-6 at 12:22- 13:1).  In 2016, Plaintiff was hired by Security Guard to work as a security guard for locations where they had contracts to provide services. (ECF 46-1 at 4).  As part of his employment, Security Guard assigned Plaintiff to work as a guard at one of Atlantic County's facilities.  (See generally ECF 46-1).  During his time working there, he began bringing a Segway to work to get around. (See ECF 46-6 at 20:1-23).  After some period of time, employees of Atlantic County reached out to Security Guard to express concern about the safety of Plaintiff operating the Segway on the premises.  (ECF 46-9 at 2).  Thereafter, Plaintiff was informed that he was no longer to bring his Segway to work.

(ECF 46-6; ECF 46-10).

At that time, Security Guard began looking to move Plaintiff's placement to the county animal shelter in a position which would have required less walking. (ECF 46-10.) However, before Plaintiff was moved, he directly approached an employee of Atlantic County to complain about the decision that he could no longer bring his Segway to work. (See ECF 46-6; ECF 46-12). Atlantic County reached out to Security Guard to make note of the incident and to ask that Plaintiff no longer work at any of Atlantic County's facilities. (ECF 46-12). Security Guard thereafter terminated Plaintiff's employment. (ECF 46-6 at 28:4-9).

On March 3, 2018, Plaintiff filed a complaint against Security Guard with the Equal Employment Opportunity Commission. (ECF 46-13). Then on December 5, 2019, Plaintiff commenced the instant action against Security Guard, which alleged violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., and the New Jersey Law Against Discrimination (the "NJLAD") N.J.S.A. § 10:5-1, et seq. (ECF 1). After Security Guard moved to dismiss the complaint for failure to join Atlantic County (ECF 5), but before the Court rendered a decision on the motion, Plaintiff filed an amended complaint naming Atlantic County as a defendant with a claim under the NJLAD (ECF 6). After the Court denied a subsequent motion to

dismiss made by Security Guard (ECF 19), Atlantic County filed an answer to the complaint and filed a cross claim against Security Guard, seeking indemnification for its costs in defending itself against Plaintiff's suit (ECF 27).  Both Atlantic County and Security Guard have filed motions for summary judgment on all counts in which they are each implicated.  (ECF 46, 48).  The Court will consider each motion in turn.

## DISCUSSION

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility

4

determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. Scott v. Harris, 550 U.S. 372, 381 (2007).

I. **Analysis of Atlantic County's Motion to for Summary Judgment**

The Court will grant Atlantic County's motion for summary judgment with respect to Plaintiff's claims. Plaintiff alleges that Atlantic County violated the NJLAD by discriminating against and retaliating against Plaintiff based on a disability. To state a claim for discrimination under the NJLAD, "a plaintiff must first establish that: (1) she is a member of a protected class; (2) she was qualified for the position in question; (3) she suffered an adverse employment action; and (4) that adverse employment action gives rise to an inference of unlawful discrimination." Medley v. Atl. Exposition Servs., Inc., 2021 WL 3144889, at *16 (D.N.J. July 26, 2021).

To make out a retaliation claim under the NJLAD, "an employee must demonstrate: (1) the employee engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action." Martone v. Jet Aviation Flight Servs. Inc., 2020 WL 3969919, at *6 (D.N.J. July 13, 2020) (internal quotation marks omitted).

Once that showing has been made for each claim, "'[t]he burden of going forward then shifts to the employer to rebut the presumption of undue discrimination by articulating some legitimate, nondiscriminatory reason for the' adverse action."

6

Tegler v. Glob. Spectrum, 291 F. Supp. 3d 565, 594–95 (D.N.J. 2018). At that point, "[t]he plaintiff then has the opportunity to prove by a preponderance of the evidence that the legitimate nondiscriminatory reason articulated by the defendant was not the true reason for the employment decision but was merely a pretext for discrimination." Grigoletti v. Ortho Pharm. Corp., 570 A.2d 903, 907 (1990).

As a threshold matter, the Court must decide if an employer-employee relationship existed between Atlantic County and Plaintiff. See Martone, 2020 WL 3969919 at *3. To assess this for purposes of the NJLAD, the District of New Jersey has in the past applied a "twelve-factor totality of the circumstances [test that] requires a court to consider: (1) the alleged employer's right to control the means and manner of the worker's performance; (2) the kind of occupation-supervised or workplace; (3) skill; (4) who furnishes the equipment and workplace; (5) the length of time in which the individual has worked; (6) the method of payment; (7) the manner of termination of the work relationship; (8) whether there is annual leave; (9) whether the work is an integral part of the business of the 'employer;' (10) whether the worker accrues retirement benefits; (11) whether the 'employer' pays social security taxes; and (12) the intention of the parties." Id.; Pukowsky v. Caruso, 711 A.2d 398, 404 (App. Div. 1998) (same). "The most important of these

7

factors is the first, the employer's right to control the means and manner of the worker's performance." Franz v. Raymond Eisenhardt & Sons, Inc., 732 F. Supp. 521, 528 (D.N.J. 1990).

The Court holds that Plaintiff has not brought forward sufficient evidence from which a reasonable juror could conclude that Atlantic County was his employer. Starting with the first factor, it appears that Security Guard, not Atlantic County, had the means to control the means and manner of Plaintiff's performance. Specifically, Plaintiff does not dispute that he was hired by Security Guard and that he never applied to work for Atlantic County. (See ECF 46-6). Plaintiff did not point to anything in the record to suggest that he was controlled by Atlantic County. With respect to the type of occupation and supervision, factor 2, and skill, factor 3, there is nothing to suggest that Plaintiff was supervised by Atlantic County or that his skills had any nexus to the County's business. Pukowsky, 711 A.2d at 404 (accepting that where the "defendant had no input at all into what skills she could use" on the job, the third factor did not weigh against defendant.)

For factor 4, on who furnishes the equipment and workplace, the record shows that Plaintiff received his uniform from Security Guard and that he used his own gun. (ECF 46-1 at 4, 7; ECF 54 at 2). Further, Atlantic County argues that Plaintiff was assigned to work on the premises owned by Atlantic County by

8

Security Guard (ECF 54 at 2) and Plaintiff has not proffered any evidence from which a factfinder could conclude otherwise. With respect to the length of time the Plaintiff worked, under factor 5, it appears that Plaintiff had a contract with Security Guard for about two years. (See generally ECF 46-1). Again, there is no evidence that Plaintiff worked for Atlantic County for any length of time.

Factors 6 through 11 deal with Plaintiff's pay, leave, social security taxes and benefits and whether any of those things were supplied by or controlled by Atlantic County. They also touch on the manner of termination and whether Plaintiff was integral to Atlantic County's business. The record shows that Atlantic County was not responsible for dealing with any of those concerns and that Plaintiff was not central to Atlantic County's business. Specifically, Plaintiff admits that his pay was not handled by Atlantic County (ECF 53 at 5). To the extent that Plaintiff argues that he was terminated from his position at the request of Atlantic County, he does not show any facts to suggest that Atlantic County was the entity that terminated him. (See id. at 7). Indeed, he only points to the fact that Atlantic County asked Security Guard that he no longer be assigned to Atlantic County sites, not that he be terminated from Security Guard (Id.) It also is not disputed that Plaintiff worked as a security guard at Atlantic County sites,

9

not that he was involved in the actual functioning of those sites.  (See id.; ECF 46-1).

Finally, for factor 12, the intent of the parties, the contract and bid for services between Atlantic County and Security Guard make clear that Atlantic County looks to Security Guard to provide the contracted-for security guard services. (ECF 46-3).  Indeed, Atlantic County's bid outline drew an implicit line between "County employees" and "personnel" assigned to Atlantic County's sites by Security Guard (Id. at 36).  In view of all of these factors, the Court determines that it is appropriate to enter summary judgment in favor of Atlantic County on the basis that it is not Plaintiff's employer.

Further, even if, assuming arguendo, Atlantic County were Plaintiff's employer, Plaintiff would not prevail on his substantive claim for violation of the NJLAD.  While there may be a fact issue as to whether Plaintiff had a disability such that he was covered by the NJLAD[1], the record does not support a

---

[1] "The NJLAD defines 'disability' as physical disability, infirmity, malformation or disfigurement which is caused by bodily injury ... which shall include, but not be limited to, ... lack of physical coordination, ... resulting from anatomical ... physiological ... conditions which prevents the normal exercise of any bodily ... functions or is demonstrable, medically ... by accepted clinical or laboratory diagnostic techniques....'" Stewart v. Cty. of Salem, 274 F. Supp. 3d 254, 259-60 (D.N.J. 2017) (quoting N.J.S.A. 10:5-5(q)).  Plaintiff testified that he was able to carry out his job functions despite his condition, (ECF 46-6 at 36:4-9), but he also testified that he was having difficulty with his dropped foot.

10

finding that Plaintiff's termination was the result of unlawful discrimination or retaliation.  Specifically, the record shows that Plaintiff was terminated for behaving inappropriately to a County employee regarding the fact that he could not use his Segway at work to facilitate his mobility.  (ECF 46-1). Plaintiff does not dispute that he directly approached an Atlantic County employee and questioned him regarding the decision not to allow him to use his Segway at work. (ECF 53 at 6).  Plaintiff contends that he did not know that this was a violation of the chain of command but does not dispute that his approach was, in fact, outside of the chain of command.  (Id. at 3-4; ECF 46-1 at 4-6).  Further, Atlantic County's request that Plaintiff no longer use his Segway at work appears to stem from the legitimate concern that someone could be "hurt" by the operation of the Segway. (ECF 46-9 at 2).  In the face of this evidence, Plaintiff has not pointed to anything in the record to suggest that these reasons for the decision to not allow Plaintiff to use is Segway and to terminate him were mere pretexts for discrimination.  Grigoletti, 570 A.2d at 907.

    Atlantic County finally asks that the Court order Security Guard to indemnify Atlantic County in all proceedings going forward should the Court deny its motion for summary judgment.

---

(Id. at 12:25- 13:1).

(ECF 46-2 at 21).  Because the Court will grant Atlantic County's motion for summary judgment with respect to Plaintiff's claims, this claim is moot.  However, for the sake of completeness, the Court will briefly discuss this part of the motion.

Importantly, Atlantic County is effectively asking Security Guard to indemnify it for an intentional tort. Clark v. Nenna, 244 A.3d 291, 295 (App. Div. 2020) (noting that discrimination claims are "intentional torts).  As a matter of public policy, parties cannot seek to have a third party indemnify them for their acts of willful misconduct. Dorsey v. Cobblestone Vill. Equities, LLC, 2009 WL 763409, at *2 (N.J. Super. Ct. App. Div. Mar. 25, 2009) ("Allocating liability between parties is part of the bargaining process. . . except for losses incurred as a result of intentional torts."); see also Ambassador Ins. Co. v. Montes, 388 A.2d 603, 606 (1978) (noting a "general principle" that a party may not seek indemnification to protect it from its own willful act).  This alone would be enough to defeat Atlantic County's claim for indemnification.

Even so, the indemnification language, itself, does not seem to contemplate providing coverage for this type of suit. "When interpreting indemnity contracts, a court is to employ the rules governing the construction of contracts generally, and should seek to ascertain the parties' intentions[.]"  Magazzu v.

12

Volmar Servs., Inc., 2009 WL 5194396, at *4 (D.N.J. Dec. 21, 2009) (internal quotation marks and citations omitted).  "When the meaning of the clause is ambiguous, however, the clause should be strictly construed against the indemnitee." Id. (internal quotation marks omitted);  Ramos v. Browning Ferris Indus., 510 A.2d 1152 (1986).

There are two clauses in question that are relevant here, one in the invitation to bid that Atlantic County sent out and another in the security bond executed by Security Guard

The clause in the invitation to bid reads as follows:

> "Safety: The contractor hereby convents and agrees to take, use provide and make all proper, necessary and sufficient precautions, safeguards and protections against the occurrence of happenings, accidents, injuries damages or hurt to any person or property during the progress of the work herein covered, and be responsible for any indemnity and save harmless the County of Atlantic, its officers, agent, servants and employees from payment of all sums of money by reason of all or any such happenings, accidents, injuries, damages, hurt to person or property that may happen or occur upon or about such work, and all fines, penalties and loss incurred for or by reason of violations or any Federal State, City or Borough ordinance or regulations while said work is in progress." (ECF 46-1 at 32).

The Court reads the language here to specifically deal with physical injuries sounding in negligence and related torts that could happen at a physical premises owned by Atlantic County. The indemnification language pertains to "happenings, accidents, injuries damages or hurt to any person or property" that could occur while Security Guard's employees are working at a location

owned by Atlantic County. Taken together, the terms in this list suggest an intent to indemnify based on physical damage or injury. Schenck v. HJI Assocs., 685 A.2d 481, 485 (App. Div. 1996) (holding that contract terms should interpreted with the "reason and spirit of the whole of the contract"); A.D.L. v. Cinnaminson Twp. Bd. of Educ., 975 F. Supp. 2d 459, 466 (D.N.J. 2013) (holding that a "contract must be read as a whole, and with common sense"). Indeed, the title word for the clause, "Safety", fits with that interpretation: the clause appears to contemplate the physical security of people and property on the premises. Therefore, the Court believes that the clause in the invitation to bid does not require Security Guard to indemnify Atlantic County in this suit.

The clause in the security bond states that Security Guard shall:

> "indemnify and save harmless the party of the first part mentioned in the contract aforesaid, its officers, agents and servants, and each and every one of them against and from all suits and costs of every kind and description, and from all damages to which the said party of the first party in the said contract mentioned, or any of its officers, agents or servants, may be put by reasons of injury to the person or property of others resulting from the performance of said work or through the negligence of the said party of the second part of said contract, or through any improper or defective machinery, implements or appliances used by the said party of the second part in the aforesaid work, or through any act or omission on the part of the said party of the second part, or his agents, employees or servants; and shall further indemnify and save harmless the party of the first part mentioned in the contract aforesaid, its officers, agents and servants from all suits and actions of

14

>any kind or character whatsoever, which may be brought or instituted by any subcontractor, materialman or laborer who has performed work or furnished materials in or about the work required to be done pursuant to the said contract or by, or on account of, any claims or amount recovered for any infringements of patent, trademark, or copyright, then this obligations shall be void, otherwise the same shall remain in full force and effect." (ECF 46-3 at 18-19).

The Court comes to the same conclusion about this clause as it did for the clause in the invitation to bid.  Again, the language in the first part of this clause contemplates indemnification for negligence and product liability claims, more specifically  physical damage or "injury to the person or property of others" as a result of Security Guard's work or harm cause by things such as "defective machinery."  The second part, dealing with claims by "any subcontractor, materialman or laborer who has performed work or furnished materials" appears to contemplate claims by a third party, not one of Security Guard's employees.  Even if the Court were to find some ambiguity in the terms "subcontractor, materialman or laborer" such that one of those terms could encompass Plaintiff, the Court would construe that in Security Guard's favor.  See Magazzu, 2009 WL 5194396 at *4.

   I.   **Analysis of Security Guard's Motion to for Summary Judgment**

Security Guard moves for summary judgment on Plaintiff's claims that it discriminated and retaliated against him under

15

the ADA and the NJLAD.  The Court will grant Security Guard's motion in its entirety.

Under the ADA, "[t]o state a prima facie cause of action for disability discrimination, the employee must show the following: (1) the employee was disabled; (2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) she has suffered an otherwise adverse employment decision as a result of discrimination." Stewart v. Cty. of Salem, 274 F. Supp. 3d 254, 259 (D.N.J. 2017).[2]  Under the ADA, disability discrimination not only includes adverse actions on the basis of a disability, but also failure to make reasonable accommodations.  See Taylor v. Phoenixville School Dist., 184 F.3d 296, 305-06 (3d Cir. 1999).  Under the ADA, "disability" means "a physical or mental impairment that substantially limits one or more major life activities," having "a record of such an impairment," or "being regarded as having such an

---

[2] As a practical matter, thought the elements are sometimes stated slightly differently, courts have interpreted the standard to set forth a discrimination or retaliation claim under the NJLAD and the ADA to be the same. A.S. v. Harrison Twp. Bd. of Educ., 2015 WL 5769985, at *5 (D.N.J. Sept. 29, 2015) ("The NJLAD provides protections to disabled persons analogous to the ADA's protections thus New Jersey courts apply the standards developed under the ADA when analyzing NJLAD claims.") (internal quotation marks omitted).  The Court lays out the elements here separately simply to provide a clean template on which to conduct its analysis.

impairment." 42 U.S.C. § 12102(1). "Major life activities" include walking and standing. Id. § 12102(2)(A). The disability in question must "limit[] the ability of an individual to perform a major life activity as compared to most people in the general population." Id. § 1630.2(j)(1)(ii). Once a plaintiff makes a prima facie case for discrimination in violation of the ADA, "[a]n employer may rebut a plaintiff's *prima facie* case of discrimination under the ADA by producing evidence that adverse employment actions were taken for reasons that are legitimate and nondiscriminatory." Sampson v. Methacton Sch. Dist., 88 F. Supp. 3d 422, 440–41 (E.D. Pa. 2015).

Claims for retaliation under the ADA follow a very similar analysis. "To prove a *prima facie* case of retaliation under the ADA, the plaintiff must demonstrate by a preponderance of the evidence that (1) she engaged in a protected activity; (2) she suffered an adverse action; and (3) a causal connection exists between the protected activity and the adverse action." Cottrell v. J&D Disc. Liquor Gallery, Inc., 2010 WL 3906786, at *3 (D.N.J. Sept. 30, 2010). "'A plaintiff need not be 'disabled' under the ADA to prevail on a retaliation claim.'" Id. (quoting Stouch v. Twp. of Irvington, 354 F. App'x 660, 667 (3d Cir.2009)).

If the employer is able to make a prima facie showing for either type of claim, the plaintiff must then show that the

17

employer's proffered nondiscriminatory reasons for terminating the plaintiff were pretextual. Sampson, 88 F. Supp. 3d at 440-41; see also Wishkin v. Potter, 476 F.3d 180, 185 (3d Cir.2007) (explaining that a plaintiff seeking to show that an employer's justification for an employment action was pretextual needs to cast doubt on the proffered justification or suggest to the factfinder that discrimination was the motivating cause of the adverse employment action).

As stated in the Court's analysis of Atlantic County's motion for summary judgment, there may be a fact issue as to whether Plaintiff has a disability under the NJLAD and the ADA. That said, even if Plaintiff meets the other elements to state a claim for discrimination, for the same reasons expressed above in analyzing Atlantic County's motion, no reasonable juror could conclude that Security Guard did not have a legitimate, nondiscriminatory reasons for terminating Plaintiff's employment. As stated above, Plaintiff did not proffer any evidence to suggest that he did not break the chain of command in addressing an Atlantic County employee about the use of his Segway. (See ECF 46-6 at 44:2-5) (Plaintiff's deposition transcript where he did not deny that he broke the chain of command). Indeed, the record shows that the handbook provided to Plaintiff by Security Guard made clear that Plaintiff was to approach his supervisors at Security Guard if he had any

questions for concerns about his work.  (See ECF 48-8 at 48:1-11).  There also noting in the record from which a factfinder could conclude that the cited reason for Plaintiff's termination -insubordination - was pretextual.  Indeed, the record shows that prior to Plaintiff's conversation about the loss of his Segway with an Atlantic County employee, Security Guard was looking to move Plaintiff to another location where he would not have to walk as much. (ECF 46-10.)  Plaintiff has not brought forth sufficient facts to show by a preponderance of the evidence that Security Guard's cited reason of insubordination for his termination was pretextual.  Grigoletti, 570 A.2d at 907.

These facts also rebut any claim for retaliation that Plaintiff has brought: the record shows that Plaintiff was terminated for the legitimate reason that he broke the chain of command at work and Plaintiff has not proffered any evidence that that was not the reason he was terminated from his employment.  This requires the Court to grant Security Guard's motion for summary judgment as to Plaintiff's claim under the ADA.

The Court will also grant summary judgment in Security Guard's favor as to Plaintiff's claim under the NJLAD.  As explained in the Court's analysis of Atlantic County's motion, the record shows that Security Guard had legitimate reasons to

terminate Plaintiff's employment that defeat Plaintiff's claims for discrimination and retaliation under the NJLAD and that no evidence of pretext exists.

## CONCLUSION

For the reasons expressed above, Atlantic County's motion for summary judgment (ECF 46) will be granted with respect to Plaintiff's claims and denied as moot with respect to Atlantic County's claim for indemnification against Security Guard. Security Guard's motion for summary judgment will be granted in its entirety.

An appropriate Order will be entered.


Date: December 9, 2021                /s Noel L. Hillman
At Camden, New Jersey                 NOEL L. HILLMAN, U.S.D.J.